```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY P. PAGLIACCETTI,           :    CIVIL ACTION
                                   :    NO. 11-6381
          Petitioner,              :
                                   :
     v.                            :
                                   :
SUPERINTENDENT JOHN                :
KERESTES, et al.,                  :
                                   :
          Respondents.             :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              JUNE 10, 2013

      Anthony Pagliaccetti ("Petitioner") is a prisoner at the State Correctional Institution—Mahanoy in Frackville, Pennsylvania. Petitioner filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Habeas Petition") challenging his custody. Magistrate Judge David R. Strawbridge recommended denial of the Habeas Petition without an evidentiary hearing. Petitioner's counsel now raises two objections.[1] For the reasons that follow, the Court will adopt Magistrate Judge Strawbridge's Report and Recommendation and deny and dismiss with prejudice the habeas petition.

---

[1] Petitioner's counsel lists four separate objections, however three objections concern whether or not mischarging the jury with respect to the requirements of the defense of self-defense constituted harmless error. As such, the Court refers to Petitioner's two objections.

I.  **FACTUAL BACKGROUND**

Petitioner is currently serving a prison term of 15 to 30 years based on convictions for third-degree murder and related offenses. The convictions stem from a dispute occurring in the early morning hours of December 24, 2002, which resulted in Petitioner, then 19 years old, shooting and killing 19-year-old Jason McFarland ("Jason"), an acquaintance of his. Report and Recommendation ("R&R") 2, ECF No. 19.

Magistrate Judge Strawbridge succinctly summarized the facts as follows:

> A dispute erupted between the two after Jason's cousin, Joseph McFarland ("Joseph"), arrived to pick him up [from a local tavern where they had been drinking,] and the conversation turned to a recent unresolved robbery of Pagliaccetti's sister of her cell phone. The Commonwealth presented evidence, through Joseph and the McFarlands' cousin, Michael Piazza ("Michael"), who was also drinking with Jason at the tavern, that Pagliaccetti grabbed Jason by his back or shoulder as they were leaving the tavern. While the argument continued outside, Joseph tried to separate Jason from Pagliaccetti and ushered Jason to his nearby car. Joseph testified that he heard gunshots as he opened the car door. He turned to see Pagliaccetti standing frozen, with a gun still pointed in the direction of Jason and himself. Jason fell to the ground, hit with one bullet to the left side of his head, which traveled from his cheek rightwards and backwards, and one bullet in the left side of the chest, which followed a rightwards, backwards, and slightly downwards trajectory.
> Pagliaccetti fled up the street and was chased by Michael. En route, he removed his red sweatshirt and stashed it, along with his gun, in a car wheel-well. Michael eventually caught him and returned him to the scene. Michael was able to identify for police where Pagliaccetti had hidden his

2

gun. Although Michael denied at the scene and in a later police interview that he assaulted Pagliaccetti, at trial he testified that he was responsible for an injury to Pagliaccetti's left eye, punching him once in the face after Pagliaccetti initially denied to the police that he was the gunman. Another McFarland family member, Uncle Michael McFarland ("Uncle Michael"), was present at the tavern but was not called by either side to testify.

Pagliaccetti contradicted significant aspects of this account at trial. He testified that it was Joseph who raised the subject of the stolen cell phone and that Jason became verbally aggressive when Pagliaccetti inquired further. He testified that he did not leave the bar at the same time as Jason, Joseph, and Michael but stepped out shortly thereafter to make sure that Jason "got in the car alright." Pagliaccetti testified that when his cousins tried to put Jason in the car, and while Pagliaccetti was standing with their Uncle Michael near the entrance of the bar, Jason broke away and struck Pagliaccetti in the left eye. He testified that Jason then returned to the nearby car, at which point it appeared to Pagliaccetti that Jason "reached for something" in "his waistband," although Pagliaccetti admittedly did not see him draw a gun and no weapons were found on his person by police. When questioned at trial about his options, Pagliaccetti suggested that "there was nowhere else to go" after Jason struck him because Uncle Michael was standing behind him and Jason, Joseph, and Michael were in front of him. He testified that "[i]t happened so fast" and that he did not have "time to think" when he drew his gun and fired two shots. He explained at trial that "I was in a situation where I had no choice but for what happened. I'm sorry for it." While he acknowledged his flight from the scene, he testified that he returned of his own accord and denied that any McFarland family member assaulted him after the shooting.

Id. at 2-4 (citations and footnotes omitted).

## II.  PROCEDURAL BACKGROUND

On April 5, 2004, a jury in the Philadelphia Court of Common Pleas returned a guilty verdict on the third-degree

3

murder charge and three weapons offenses. Habeas Pet. 4, ECF No. 1. On June 10, 2004, the court sentenced Pagliaccetti to a 15- to 30-year term of imprisonment, without any additional sentence for the weapons convictions. R&R 4. On June 24, 2004, the court denied his motion for reconsideration of the sentence. Id. Petitioner appealed his murder conviction to the Pennsylvania Superior Court, arguing that the conviction was based on insufficient evidence in light of his claim of self-defense. The Superior Court affirmed his conviction in an unpublished opinion on May 25, 2005. Id. The Pennsylvania Supreme Court denied Petitioner's request for allowance of appeal on September 21, 2005. Id.

On September 18, 2006, Petitioner, represented by attorney Neil E. Jokelson, collaterally attacked his convictions under the Pennsylvania Post Conviction Relief Act ("PCRA"). Id. at 4-5, n.6. Petitioner filed for relief on several grounds, including ineffective assistance of trial counsel for failing to object to what Pagliaccetti characterized as an improper jury instruction regarding self-defense. Id. at 5. He also alleged ineffective assistance of appellate counsel in not litigating the issue of trial counsel's ineffectiveness. Id. The PCRA court denied relief. Id. Petitioner, still represented by Mr. Jokelson, appealed to the Superior Court, claiming that he was subjected to trial court error regarding the self-defense

4

instruction, in violation of his federal constitutional rights. Id. The Superior Court held that the issue of trial court error as to the jury instruction had been waived since no objection was made at trial. It further held that, in fact, there was no merit to the assertion of error as the trial court "clearly and accurately conveyed the applicable law regarding self-defense." See Commonwealth v. Pagliaccetti, No. 197 EDA 2009, slip op. at 5-6 (Pa. Super. Ct. March 12, 2010). On October 14, 2010, the Pennsylvania Supreme Court denied Petitioner's request for allowance of appeal. R&R 5.

On October 12, 2011, Mr. Jokelson filed the instant petition on behalf of Petitioner for federal habeas relief under 28 U.S.C. § 2254. Habeas Pet. Petitioner contends that his due process rights were violated because the trial court's jury charge did not adequately convey the Commonwealth's burden of proof to overcome an assertion of self-defense to a murder charge as set forth in the applicable Pennsylvania statute. R&R 1.

On November 18, 2011, Magistrate Judge Strawbridge issued an Order to Show Cause as to why Petitioner's habeas petition should not be dismissed as untimely.[2] Order to Show

---

[2] Magistrate Judge Strawbridge explained, and neither Petitioner nor Mr. Jokelson dispute, that the habeas petition was untimely as per the one-year period of limitation imposed under the Antiterrorism and Effective Death Penalty Act of 1996

5

Cause, Nov. 18, 2011, ECF No. 4. In a letter dated November 24, 2011, Petitioner explained that the late filing was a result of a "complete breakdown in the communications with Neil Jokelson." Ltr. from A. Pagliaccetti to Mag. J. Strawbridge, Nov. 24, 2011, ECF No. 7. Petitioner averred that Mr. Jokelson was negligent and unresponsive to his communications, and that extraordinary circumstances warranted equitable tolling of the limitations period. Id. Mr. Jokelson filed a separate response to the Court's Order to Show Cause on January 31, 2012, essentially supporting Petitioner's claims. Pet'r's Counsel's Resp. to Order to Show Cause, ECF No. 10. Mr. Jokelson accepted full responsibility for the late filing of the petition, and recommended that the Court grant Petitioner an evidentiary hearing on the issue of equitable tolling and appoint Petitioner independent counsel to represent him in the hearing. Id. at 7-8. On May 7, 2012, Petitioner filed a pro se motion for appointment of counsel for the remainder of the habeas proceedings. Mot. for Appointment of Counsel, ECF No. 15.

The Commonwealth responded to Petitioner's habeas

---

("AEDPA"). Order to Show Cause, Nov. 18, 2011, at 2. Applying 28 U.S.C. § 2244(d) to the procedural history of Pagliaccetti's state conviction yielded a deadline on or about January 18, 2011 for initiating federal habeas proceedings. R&R 6 n.9. Thus Petitioner's filing was 267 days late. Order to Show Cause, Nov. 18, 2011, at 4.

claims, arguing that the habeas petition is time-barred under AEDPA and that equitable tolling is not warranted for this case of "garden-variety" neglect by counsel. Respondent's Answer to Pet. for Habeas Relief 3, 5, ECF No. 14. In the alternative, the Commonwealth argues that Petitioner's habeas claims are meritless because there was no error of state or federal law in the trial court's jury instructions; therefore, Pagliaccetti's counsel could not be deemed ineffective for failing to raise baseless objections. Id. at 16.

Upon referral, Magistrate Judge Strawbridge issued a Report and Recommendation to deny the Habeas Petition on the merits. R&R 1. Judge Strawbridge also denied Petitioner's motion for appointment of counsel. See Order, Sept. 27, 2012, ECF No. 18. Petitioner's counsel of record,[3] Mr. Jokelson, filed objections on October 15, 2012. ECF No. 20. Petitioner also filed objections pro se on October 16, 2012.[4] The matter is now ripe for disposition.

---

[3]   Michael Wiseman entered his appearance on behalf of Petitioner in the case on November 30, 2012. ECF No. 24. Mr. Jokelson withdrew his appearance on January 3, 2013. ECF No. 25.

[4]   The Government filed a motion for extension of time to file a response to Petitioner's objections on October 31, 2012. ECF No. 22. The Court granted the motion on November 1, 2012, extending the deadline for the response to December 1, 2012. ECF No. 23. The Government never filed a response.

**III. LEGAL STANDARD**

The Court may refer an application for a writ of habeas corpus to a U.S. Magistrate Judge for a report and recommendation. Section 2254 R. 10 ("A magistrate judge may perform the duties of a district judge under these rules, as authorized under 28 U.S.C. § 636.); see also 28 U.S.C. § 636(b)(1)(B) (2006 & Supp. V 2011). A prisoner may object to the magistrate judge's report and recommendations within fourteen days after being served with a copy thereof. See 28 U.S.C. § 636(b)(1); E.D. Pa. R. 72.1(IV)(b). The Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court does not review general objections. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) ("We have provided that § 636(b)(1) requires district courts to review such objections de novo unless the objection is not timely or not specific." (internal quotation marks removed)). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. Therefore, the Court will conduct a de novo review of those portions of the Report and Recommendation to which Petitioner objects.

On habeas review, the Court must determine whether the state court's adjudication of the claims raised was (1) contrary

8

to, or an unreasonable application of, clearly established federal law, or (2) based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d) (2006).

**IV. DISCUSSION**

For the sake of judicial economy, Magistrate Judge Strawbridge, rather than deciding the potentially close question concerning the timeliness of Pagliaccetti's petition, proceeded to address the merits of the issue giving rise to Petitioner's due process and related ineffectiveness claims, applying a harmless error analysis.[5] R&R 7. Magistrate Judge Strawbridge concluded that Pagliaccetti cannot obtain relief because he was subjected only to harmless error, and therefore recommended that the Court deny Petitioner's request for an evidentiary hearing on the issue of equitable tolling of the limitations period.

Petitioner and his now former counsel, Neil Jokelson, have separately filed objections to Magistrate Judge

---

[5] Though generally courts prefer, for reasons of judicial economy and concerns of federalism and comity, to determine whether a petition is timely before reaching its merits, in the instant case, the petition appears to be sufficiently meritless such that the Court need not pause to determine whether equitable tolling is available. Cf. Duncan v. Walker, 533 U.S. 167, 178 (2001) (explaining that AEDPA's goal is to further interests in comity, federalism, and finality of convictions). The Court notes that neither party has objected to proceeding on the issues in this order.

Strawbridge's Report and Recommendation. Because there is no constitutional right to hybrid representation, and a district court is not obligated to consider pro se motions by represented litigants, the Court will focus on Mr. Jokelson's objections. See McKaskle v. Wiggins, 465 U.S. 168, 183 (1984); U.S. v. D'Amario, 328 Fed. App'x 763, 764 (3d Cir. 2009). Petitioner submitted a motion for appointment of counsel after his habeas petition was filed, but Magistrate Judge Strawbridge denied this motion on September 27, 2012. Order Denying Motion for Appointment of Counsel, Sept. 27, 2012, ECF No. 18. Mr. Jokelson did not withdraw from his representation of Petitioner until January 3, 2013, well after his objections were filed. Notice of Withdrawal of Appearance by Neil E. Jokelson, Jan. 3, 2013, ECF No. 25. The Court, therefore, considers Mr. Jokelson's objections, noting that in any case, they are consistent with and encompass all of the objections raised independently by Petitioner.

     Mr. Jokelson raises two primary objections to the Report and Recommendation. First, that it was error to conclude that the due process violation of mischarging the jury with respect to the requirements of the defense of self-defense was harmless. And second, that it was error not to appoint new counsel to represent Petitioner and not to hold an evidentiary hearing on the issue of equitable tolling. Because the second

objection turns on the validity of the first, the Court begins with the question of whether the incorrect jury instruction on self-defense constituted harmless error.

A. Effect of the Improper Jury Instruction

Petitioner, through his counsel, objects to Judge Strawbridge's determination that the trial court's jury instruction on self-defense was erroneous, but that the error was harmless. Since neither party objects to Magistrate Judge Strawbridge's conclusion that the instructions were in error, the Court will not reiterate his analysis, but will instead turn to the question of what effect, if any, the erroneous instruction had on the jury's verdict.

1. Brecht and Strickland

Petitioner seeks habeas relief on two grounds: 1) a due process violation based upon the faulty jury instructions, and 2) a derivative ineffective assistance of counsel claim. Instructional errors resulting in a due process violation are subject to a harmless error analysis. Yohn v. Love, 76 F.3d 508, 522 (3d Cir. 1996). Brecht v. Abrahamson is the foundational case announcing the harmless error test. 507 U.S. 619 (1993). Under Brecht, an error must have "had substantial and injurious effect or influence in determining the jury's verdict" for it to be considered harmful. Id. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946). Since Brecht, the Supreme

11

Court has elaborated upon the test, holding "that in cases of grave doubt as to [the] harmlessness [of an error] the petitioner must win." O'Neal v. McAninch, 513 U.S. 432, 437 (1995). "Grave doubt" exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in a virtual equipoise as to the harmlessness of the error." Id. at 435.

In conducting the harmless error inquiry, judges are to examine the impact of the error on the trial as a whole. Yohn, 76 F.3d at 523. "It is thus inappropriate to ask whether there was sufficient evidence to support the result, apart from the phase of the trial affected by the error. The correct inquiry is whether the error had a substantial influence on the verdict despite sufficient evidence to support the result apart from the error." Id.

In this case, Petitioner not only alleges that the jury instruction was constitutionally infirm, but also that counsel was ineffective for failing to object at trial. The Sixth Amendment right to counsel is the right to effective assistance of counsel. E.g., Strickland v. Washington, 466 U.S. 668, 686 (1984). To warrant reversal of a conviction, a prisoner must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. See id. at 687; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008)(citing Strickland).

12

To prove prejudice, a convicted defendant must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." Strickland, 466 U.S. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Rather than applying the Brecht and Strickland tests separately, the Third Circuit has used the Brecht test to reach a conclusion regarding whether or not there has been ineffective assistance of counsel. In Whitney v. Horn, the petitioner brought a due process violation claim based on a faulty jury instruction and an ineffective assistance of counsel claim based on his counsel's failure to object. 280 F.3d 240, 258 (3d Cir. 2002). Rather than parsing out the subtleties between the two standards, the Third Circuit held:

> [T]he ultimate issue under either test reduces to determining what effect, if any, the erroneous instruction had on the jury's verdict. Accordingly, if [the petitioner] demonstrates that the erroneous instruction had a "substantial and injurious effect or influence in determining the jury's verdict," such that it was not harmless under Brecht, he has also demonstrated that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Id. at 258 (quoting Brecht, 507 U.S. at 637, and Strickland, 466

U.S. at 694) (citations omitted). Because the instant case is analogous to Whitney, the Court will follow the Third Circuit and first conduct analysis under Brecht.

    2.   The Trial Court's Error

Magistrate Judge Strawbridge concluded that the jury instruction regarding self-defense that was recited at Petitioner's trial did not accurately reflect Pennsylvania law on self-defense and was materially different from the instruction to which he was entitled. R&R 16. The trial court charged the jury as follows:

> The law states that if a defendant employs deadly force to protect himself, his use of force must meet the requirements as well as the basic rule. The defendant must reasonably believe he is in immediate danger of death or serious bodily injury from the other person, and reasonably believe it is necessary then and there to use deadly force upon that person to protect himself.
>
> The law states that the defendant must have been free from fault in provoking or continuing the difficulty which has led to his use of deadly force, and that the defendant must have violated no duty to retreat. A defendant is at fault in provoking a difficulty if he is the initial aggressor. A defendant is at fault in continuing a difficulty if the other person, after provocation or provoking a fight, withdraws in good faith, making his peaceful intentions known, but the defendant follows and renews the fight. . . .
>
> Because the Commonwealth has the burden of disproving the defendant's claims to self-defense, you cannot find the defendant guilty of any crime unless you're satisfied beyond a reasonable doubt that the defendant did not act in justifiable self-defense. In other words, you cannot find the defendant guilty unless you're satisfied beyond a reasonable doubt that at

14

> least one of the requirements essential to that defense is lacking.
>
> More particularly, you cannot find the defendant guilty of any crime unless you're satisfied beyond a reasonable doubt that the defendant did not reasonable believe that he was in immediate danger of death or serious bodily injury from Jason McFarland, or that the defendant did not reasonably believe it was necessary then and there to use deadly force upon the victim—that's Jason McFarland—to protect himself, or that the defendant was not free from fault in provoking or continuing the difficulty which led to his use of deadly force, or that the defendant violated a duty to retreat.

N.T. Apr. 2, 2004 at 73-75. Under this charge, the Commonwealth could satisfy its burden to disprove Petitioner's claim of self-defense and carry its burden to show the commission of murder if it demonstrated beyond a reasonable doubt that Petitioner "was not free from fault in provoking or continuing the difficulty which led to his use of deadly force."

Magistrate Judge Strawbridge concluded that this jury instruction was deficient because, in order for the theory of provocation to defeat the claim of self-defense, "the Commonwealth had to establish that Pagliaccetti undertook a provocative action towards Jason McFarland <u>with a particular intent</u>: an intent that it would lead either to Jason's death or to serious bodily injury."[6] R&R 20. But, as Magistrate Judge

---

[6] In reaching this conclusion, Magistrate Judge Strawbridge primarily relied on the statutory language in 18 Pa. Cons. Stat. § 505(b)(2) (1973) and the Pennsylvania Supreme

15

Strawbridge noted, "[the] fact that an instruction may have been in error under state law does not ... by itself establish a basis for habeas relief." R&R 22 (citing Estelle v. McGuire, 502 U.S. 62, 71-72 (1991)).

       3.   Harmless Error Analysis

Magistrate Judge Strawbridge determined that under Brecht's harmless error analysis, habeas relief should not be granted. R&R 24. The Court agrees. In determining that the trial court's error was harmless, Magistrate Judge Strawbridge concluded that the prosecution presented sufficient evidence to defeat Petitioner's claim of self-defense by showing that Petitioner did not abide by his duty to retreat and did not hold a reasonable belief that he was in immediate danger of death or serious bodily injury. Therefore, the erroneous jury instruction did not have "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637 (quotations omitted).

As Magistrate Judge Strawbridge explained, there was significant evidence to support a finding by the jury that Petitioner could have retreated from Jason McFarland rather than employing deadly force. By Petitioner's own account, once he entered into a discussion with the four other men about who had

---

Court's analysis in Commonwealth v. Samuel, 590 A.2d 1245, 1248 (Pa. 1991). See R&R 17-18.

stolen his sister's cell phone, Jason started screaming obscenities and making threats. N.T. 4/1/04 at 87. At trial, when asked what Jason was screaming about, Petitioner responded, "Why are you coming at me, dog, he said to me. I'll F you up. I'll F your girlfriend up. I'll kill 'ya both. Stuff along them lines." Id. Petitioner then stated that Jason's friends grabbed Jason and led him toward their car. Id. He said that he followed them out of the bar onto the sidewalk to check that Jason got into the car safely. Id. at 98. When defense counsel asked Petitioner at trial why he left the bar, he said, "Just to make sure the kid got in the car alright. He was drinking. We were all drinking. Just wanted to make sure he got home safe." Id. Even if the jury believed this explanation of Petitioner's actions, it seems clear that Petitioner could have retreated into the bar after Jason punched him. The prosecutor persuasively argued this point at trial: "All he had to do was walk in the bar. No one was holding him. No one was attacking him. The person who had just punched him was 20 feet away by his own words at the car. You turn around. You walk in. That's not what he did. That's not what he did at all." N.T. 4/2/04 at 42. In short, there was substantial evidence at trial that Petitioner could have retreated from the conflict and avoided the use of deadly force.

Moreover, there was little credible evidence that

17

Petitioner reasonably believed that Jason McFarland was about to seriously injure him when he allegedly reached for something in his waistband. As Magistrate Judge Strawbridge noted, it defies logic to argue that Jason would punch Petitioner, and then run away from him, only to pull a gun on him from a distance of twenty feet. R&R 29. Petitioner's alleged belief that Jason was reaching for a gun simply is not reasonable.

Assuming that the jury had not received erroneous instructions, and that they found that Petitioner had not provoked or continued the conflict with the intent to employ deadly force, Petitioner's claim of self-defense still would have failed. Even if the jury believed the entirety of Petitioner's testimony at trial, which seems unlikely at best,[7] there was still substantial evidence showing that he violated his duty to retreat and did not hold a reasonable belief that Jason McFarland was about to seriously injure or kill him. Under the Brecht test, the Court examines whether the trial error had

---

[7] The prosecutor pointed out a number of logical inconsistencies in Petitioner's testimony. For example, Petitioner testified that he shot Jason McFarland twice after being punched in the left eye. In her closing, the prosecutor asked, "If he was punched outside the bar, before he fired, how the hell, excuse me, did he fire the gun with such accuracy." N.T. 4/2/04 at 51 (arguing that Petitioner was likely punched after having shot Jason, rather than before). The prosecutor also pointed out that Jason had no injuries or scrapes on his arms or hands that would suggest that he had punched anyone. Id. at 52.

a substantial influence on the verdict. See supra subsection IV.A.1. Generally, relief is only granted if "grave doubt" exists in the judge's mind as to the harmlessness of the error. O'Neal, 513 U.S. at 437. This standard is consistent with the principal that the writ of habeas corpus should only be granted as an extraordinary remedy. See Brecht, 507 U.S. at 633-34, 637-38 (distinguishing between the "harmless beyond a reasonable doubt" standard announced in Chapman v. California, 386 U.S. 18, 24 (1967), and the less onerous harmless error standard applied on collateral review). Given the significant evidence rebutting Petitioner's claim of self-defense, the Court has little, if any, doubt that the verdict would have been the same if the jury had been properly instructed. In failing the harmless error test applied to alleged due process violations, Petitioner also fails to establish prejudice under Strickland. For this reason, there is no basis for the Court to grant Petitioner his requested habeas relief.

    B.    Equitable Tolling

Petitioner alleges that he is entitled to equitable tolling of the limitations period for his habeas petition due to extraordinary circumstances created by his former lawyer, Neil Jokelson. Having determined that Petitioner's habeas petition fails on the merits, the issue of whether the Court should hold an evidentiary hearing regarding any possible application of

19

equitable tolling is moot.

**V.   CERTIFICATE OF APPEALABILITY**

The Court will not issue a Certificate of Appealability because Petitioner has not made a substantial showing of the denial of his constitutional rights. See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

**VI.  CONCLUSION**

For the reasons provided, the Court will approve and adopt Magistrate Judge Strawbridge's Report and Recommendation, overrule Petitioner's objections thereto, and deny the Petition for a Writ of Habeas Corpus without an evidentiary hearing. The Court will not issue a Certificate of Appealability.